IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JANE DOE (R.A.), an individual, : | |
| Plaintiff, : | Case No. 2:23-cv-3459 |
| : | |
| v. : | Chief Judge Algenon L. Marbley |
| : | |
| : | Magistrate Judge Elizabeth P. Deavers |
| BEST WESTERN INTERNATIONAL, : | |
| INC., *et al.*, : | |
| : | |
| Defendants. : | |

**OPINION & ORDER**

This matter is before this Court on Defendants Extended Stay America, Inc., ESA P Portfolio LLC, and ESH Hospitality's ("ESA") Motion to Dismiss. (ECF No. 16). For the following reasons, Defendants' Motion is hereby **DENIED**.

**I. BACKGROUND**

This case arises under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a). Plaintiff R.A. alleges she met her traffickers when she was seventeen and that for at least eight months, between 2012 and 2013, she was trafficked for sex at several hotels in the Columbus Area, including the Extended Stay America. (ECF No. 11 ¶¶ 22, 29). Plaintiff alleges that her "sexual exploitation repeatedly occurred in rooms of the Columbus Extended Stay America and was facilitated by ESA." (*Id.* ¶ 31). She also alleges that "Defendants have failed, at all levels, to take appropriate action in response to their knowledge of widespread and ongoing human trafficking in their hotels," and that "they have continued financially benefiting by providing venues for the sexual exploitation of victims like R.A." (*Id.* ¶ 48).

According to R.A., each stay at the ESA raised "red flags," that should have been obvious to staff, including, but not limited to: "constant and heavy foot traffic in and out of R.A.'s room involving men who were not hotel guests"; multiple trafficking victims at the hotel at the same time; "R.A., a teenager, shared a room with her trafficker, who was decades older, and another victim"; "altercations between R.A.'s trafficker and his victims"; "R.A.'s trafficker was making payments to hotel staff to keep quiet about the trafficking activity and allow it to continue"; "[r]ooms were paid for with cash or prepaid cards"; and there were "effects on her appearance, demeanor, movements throughout the hotel, and her interactions with her trafficker, hotel staff, and others," such that staff would have been on notice that she was "being continually subjected to coercion, control, and exploitation." (*Id.* ¶¶ 28, 110). She also explains that her trafficker used the hotel's Wi-Fi to post advertisements for the sale of her body. (*Id.* ¶ 117(e)).

Plaintiff now seeks to hold ESA liable as a beneficiary of its participation in commercial ventures that it knew, or should have known, violated the TVPRA. Plaintiff commenced this action in October 2023, (ECF No. 1), and filed an Amended Complaint in December 2023 (ECF No. 11). Two weeks later, Defendants filed a Motion to Dismiss. (ECF No. 16). Plaintiff responded, and Defendants replied. (ECF Nos. 39; 43). The Motion is now ripe for review.

## II.  STANDARD OF REVIEW

This Court may dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F. 3d 950, 958–59 (6th Cir. 2005). This Court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning*

2

*Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F. 3d 430, 434 (6th Cir. 2008). If more than one inference may be drawn from an allegation, this Court must resolve the conflict in favor of the plaintiff. *Mayer v. Mylod*, 988 F. 2d 635, 638 (6th Cir. 1993). This Court cannot dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle [her] to relief." *Id.* The Complaint should also be read as a whole, even if a specific alleged fact read in isolation appears meaningless. *Ricchio v. McLean*, 853 F.3d 553, 557 (1st Cir. 2017).

### III. LAW & ANALYSIS

#### A. Improper Party

As an initial matter, ESA argues that Defendant ESH Hospitality, Inc. should be dismissed from this lawsuit because Plaintiff impermissibly amended her complaint to include ESH after the period in which she could amend without court permission had expired. But Defendants misunderstand Federal Rule of Civil Procedure 15, which governs amendments to pleadings. Under Rule 15, "a party may amend its pleading once as a matter of course no later than: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or service of a motion under Rule 12(b) . . ."

Here, Plaintiff filed her initial Complaint on October 18, 2023. (ECF No. 1). As a result, Defendants contend that she could only add parties as a matter of right until November 8, 2023— 21 days later. (ECF No. 16 at 16). But ESA filed a Motion to Dismiss on November 13, 2023. (ECF No. 7). Under Rule 15(1)(B), that filing resets the clock, allowing Plaintiff to amend her

3

Complaint as of right by November 4, 2023. She did exactly that. (ECF No. 11). Plaintiff's addition of ESH Hospitality as a party did not require her to seek leave to amend.

### B. Liability Under the TVPRA § 1595

This Court has undertaken extensive analysis of the issue of civil liability of hotel defendants in sex trafficking cases under the TVPRA in several cases with many factual similarities to this one. *See e.g., T.P. v. Wyndham Hotels & Resorts, Inc.*, No. 2:21-cv-04933, 2022 WL 17363234 (S.D. Ohio Dec. 1, 2022); *A.C. v. Red Roof, Inc.*, No. 2:19-cv-4965, 2020 WL 3256261 (S.D. Ohio Jun. 16, 2020); *Doe S.W. v. Lorain-Elyria Motel, Inc.*, No. 2:10-cv-1194, 2020 WL 1244192 (S.D. Ohio Mar. 16, 2020); *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959 (S.D. Ohio 2019); *H.H. v. G6 Hospitality, LLC*, No. 2:19-cv-755, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019). This case is distinct, however, in that Plaintiff alleges not only that Defendants benefitted from a sex trafficking venture, but that they are civilly liable for violating § 1591 themselves. This is because, unlike the majority of TVPRA cases this Court has considered, the ESA location in question is not a franchise.

The TVPRA has two provisions relevant to this case. First, the TVPRA provides for criminal penalties set forth in 18 U.S.C. § 1591:

(a) Whoever knowingly—

(1) in or affecting interstate or foreign commerce, . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

> knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such

4

> means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a). Section 1591 defines "participation in a venture" as "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)," § 1591(e)(4), and defines "venture" as "any group of two or more individuals associated in fact, whether or not a legal entity," § 1591(e)(6). Secondly, the standard for civil liability under the TVPRA is set forth in 18 U.S.C. § 1595:

> An individual who is a victim of a violation of this chapter may bring a civil action against the *perpetrator* (or whoever *knowingly benefits*, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a) (emphases added).

There are a few preliminary matters. First, this Court has held in several cases that § 1595(a) can be a standalone claim, and civil defendants do not *need* to have been charged or convicted of the underlying criminal sex trafficking offense under § 1591. *M.A.*, 425 F. Supp. 3d at 964; *H.H.*, 2019 WL 6682152 at *2 (citing Cong. Research Serv., R40190, The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (P.L. 110-457): Criminal Law Provisions, at 16 (Jan. 29, 2009) (the amendments to the TVPRA "create[ ] civil liability both for those who face criminal liability for their profiteering and those who do not.")); *Plaintiff A v. Schair*, No. 2:11-cv-00145-WCO, 2014 WL 12495639, at *3 (N.D. Ga. Sept. 9, 2014) (the 2008 amendments broadened the parties who could be sued for trafficking violations from only the perpetrator)).

5

Second, Defendants argue that Plaintiff has failed plausibly to allege that she is a victim of trafficking. This is the first of several of Defendants' arguments that boil down to urging an inappropriately high pleading standard. Under the TVPRA, trafficking occurs when someone causes a minor to engage in commercial sex, or when someone causes an adult to engage in commercial sex through "force, threats of force, fraud [or] coercion." § 1591(a). In order to plead a violation of § 1595, the civil counterpart to the criminal liability allowed for in § 1591, a plaintiff must allege that he or she is "a victim of a violation of this chapter." § 1595.

Defendants argue that Plaintiff does nothing more than recite elements, and therefore has not sufficiently alleged that she was trafficked. But complaints must be read as a whole, and the fact that portions of Plaintiff's allegations reflect the language of the statute does not render irrelevant that she alleges—in plenty of detail—that when she was "a vulnerable 17-year-old, . . . her trafficker, who was decades older than her, took her under his control and used manipulation, threats of violence, and other means of coercion to cause her to engage in commercial sex for his financial benefit." (ECF No. 11 ¶ 22). Defendants also argue that Plaintiff has not alleged that she was a minor at the subject property because she was first trafficked at age 17 and "Plaintiff's Complaint does not specifically identify when, during the over one-and-half-year Trafficking Period, she was at which hotel or for how long." (ECF No. 16 at 5). But Plaintiff specifically alleges that "[d]uring a period that includes but is not limited to February 15, 2012, to October 31, 2013, [she] was repeatedly and regularly trafficked at the Columbus Extended Stay America." (ECF No. 11 ¶ 29). She is entitled to the reasonable inference that she was a minor on at least one

6

day that she was trafficked at the subject property. Accordingly, Plaintiff has sufficiently pleaded that she is "a victim of this chapter" pursuant to § 1595(a) in order to survive a motion to dismiss.[1]

### 1. Beneficiary Liability

This Court first analyzes Plaintiff's direct civil liability claim under the "beneficiary theory" of § 1595(a). The Plaintiff must plead the following in order to survive a Motion to Dismiss under this theory: (1) the person or entity must "knowingly benefit[], financially or by receiving anything of value"; (2) from participating in a venture; (3) that the "person knew or should have known has engaged in an act in violation of this chapter." § 1595(a). A plaintiff may satisfy these elements by showing that "defendant's own acts, omissions, and state of mind establish each element." *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1060 (D. Colo. 2021).

#### a. Knowing benefit

Plaintiff has sufficiently alleged that Defendants "knowingly benefited" financially from a venture in violation of the TVPRA. Plaintiff alleges that Defendants profited through renting rooms to Plaintiff's traffickers. (ECF No. 11 ¶ 118(a)).

This Court has found on several occasions that "the rental of a room constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element of the § 1595(a) standard." *M.A.*, 425 F. Supp. 3d at 965; *see also H.H.*, 2019 WL 6682152 at *2; *see also J.L.*, 521

---

[1] Defendants argue that because Plaintiff tacked on an allegation that she did not know she was being trafficked until she was freed from captivity, apparently in the event that Defendants challenged the statute of limitations in this case, her allegations are internally contradictory. (ECF No. 16 at 4-5). Defendants did not end up challenging the timeliness of Plaintiff's filing of this lawsuit, but in her Complaint, Plaintiff did allege multiple theories that were intended to preemptively bolster the filing against any statute of limitations challenges: the "discovery rule," whereby a claim does not accrue until the injury is discovered, the doctrine of equitable tolling, and the continuing tort doctrine. That one of these paragraphs, pertaining to the discovery rule, includes an allegation that "she did not know she was a person trafficked, much less that she was being victimized by a human trafficking venture," (ECF No. 11 ¶ 133), does not cancel out her more central allegations of coercion. Indeed, this Court understands Plaintiff's allegation to be that she did not understand that *in a legal sense*, she was being trafficked, or that she might have a claim under the TVPRA.

F. Supp. 3d at 1061 (concluding that allegations that a hotel defendant received a percentage of room revenue where trafficking occurred, was sufficient to meet the knowingly benefited element under 18 U.S.C. § 1595(a)); *Gilbert v. U.S. Olympic Comm.*, 423 F. Supp. 3d 1112, 1137 (D. Colo. 2019) (finding the forced labor provision of § 1589(b) does not "require[ ] the party to benefit from the [forced] labor or services for liability to attach"). The same conclusion applies here.

### b. Participation in a venture

Plaintiff has also alleged sufficient facts to demonstrate that Defendants' conduct constituted "participation in venture" under § 1595(a). Defendants do not argue otherwise. This Court has held that a plaintiff alleges "sufficient facts to show Defendants 'participated in a venture' under § 1595 by alleging that Defendant rented rooms to people it knew or should have known were engaged in sex trafficking." *M.A.*, 425 F. Supp. 3d at 970 (citing *Jean-Charles*, 937 F. Supp. 2d at 288–89); *Ricchio*, 853 F.3d at 555 (finding sufficient allegations that, among other things, the trafficker and hotel owner had prior dealings); *Doe S.W.*, 2020 WL 1244192, at *6–7 (finding allegations that defendant hotels repeatedly rented rooms to individuals they should have known were traffickers based on the totality of the circumstances, were sufficient to survive a Rule 12(b)(6) motion); *H.H.*, 2019 WL 6682152, at *4 (same); *A.C.*, 2020 WL 3256261, at *6 (same).

Here, Plaintiff alleges that Defendants participated in a venture with sex traffickers at the subject property by continuing to rent rooms to them once they knew or should have known about the traffickers' conduct and by operating the hotel in a way that enabled sex trafficking there. (ECF No. 11 ¶¶ 29, 117, 118). Not only did Defendants continue to rent rooms, Plaintiff alleges that ESA staff accepted payments to stay quiet about the trafficking. (*Id.* ¶ 110). Given that this Court concludes below that Defendants not only should have known about the ongoing trafficking,

8

but had actual knowledge of it, Plaintiff has plausibly alleged participation in a venture with Plaintiff's trafficker. Defendant does not contend otherwise.

> c. *Knew or should have known the venture violated the TVPRA*

Plaintiff has also plausibly alleged that ESA at least should have known that the venture in which they were engaged was violating § 1591. A defendant cannot be liable under 18 U.S.C. § 1595(a) unless it "knew or should have known" that the venture from which it benefitted "has engaged in an act in violation of" the TVPRA. Defendants need not have actual knowledge of trafficking crimes for liability to attach, as the language of § 1595(a) demonstrates that constructive knowledge is sufficient. *M.A.*, 425 F. Supp. 3d at 970 (citing *Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276, 288–89 (D. Conn. 2013)).

Defendants contend that Plaintiff's allegations regarding her own trafficking at the subject property are insufficient for two reasons: (1) they are "vague, boilerplate assertions"; and (2) she does not allege facts that put ESA on notice that she was being coerced to engage in commercial sex, *i.e.* trafficked, as opposed to engaging in consensual commercial sex. This Court is guided in its analysis of Plaintiff's allegations by two cases that establish the spectrum on which civil liability under the TVPRA can be found. In *Ricchio v. McLean*, the plaintiff alleged that the hotel owner and the trafficker were working together in a sex trafficking scheme evidenced by a "high-five" while discussing "getting this thing going again," a past business relationship between the two, and allegations that one of the hotel owners had gone to the victim's room and "had shown indifference to [plaintiff's] obvious physical deterioration." *Ricchio*, 853 F. 3d at 555. Plaintiff alleged that while "in plain daylight view of the front office of the motel," her trafficker "kick[ed] her and force[d] her back toward the rented quarters when she had tried to escape." *Id.* The Court

9

concluded that the defendants "acted, at least, in reckless disregard" of the nature of the venture for purposes of § 1589 and § 1595. *Id.* at 557.

Conversely, in *Lawson v. Rubin*, plaintiffs sued Blue Icarus, the owner of a condo that it leased to Howard Rubin who was procuring women who he then sexually assaulted and abused at that location. No. 1:17-cv-6404 (BMC), 2018 WL 2012869, at *2 (E.D.N.Y. Apr. 29, 2018). The court found the plaintiff's allegations of one police visit after a fight ensued and one ambulance sent to the residence in six years insufficient to hold Blue Icarus liable under § 1595. The Court reasoned that even if Blue Icarus had done further investigation following the incidents, it would not have uncovered any more information about the alleged trafficking. *Lawson*, 2018 WL 2012869, at *13–14.

Plaintiff's allegations fall closer to *Ricchio* than to *Lawson*. Plaintiff alleges that her stays at Defendants' property produced repeated "red flags," including payment in cash, a large number of male visitors, effects on her demeanor, and "altercations" between her trafficker and his victims. (ECF No. 11 ¶¶ 28, 105). More importantly, Plaintiff alleges that her trafficker routinely paid off staff to ignore signs of her trafficking. (*Id.* ¶ 110(g)). This Court has previously concluded that many aspects of Plaintiff's experience should have alerted staff to her trafficking, including cash payments from her traffickers, and frequent male guests. *See M.A.*, 425 F. Supp. 3d at 967; *see also T.P.*, 2022 WL 17363234, at *8-9. And it is of no moment that the details of the "red flags" at ESA and at the other hotel where she was trafficked, Best Western, are similar. (ECF No. 16 at 7). "While Plaintiff has made similar allegations against the other Defendants, this is not a situation where defendants '[were] not even mentioned in the body of the complaint' and "[t]he only allegations that could plausibly apply [t]o [t]hem are allegations directed at all . . .

10

Defendants." *M.A.*, 425 F. Supp. 3d at 973. This was the same trafficker and the same victim, within the same period of time; that he had a *modus operandi* is unsurprising.

Additionally, the Complaint presents several examples of articles about prostitution and trafficking-related arrests that took place in various Extended Stay America properties, spanning from 2011 to 2018. Defendants point out several issues with these examples, some of which are more salient than others: some arrests took place after the period during which Plaintiff was trafficked; the customer reviews complain of women who appeared to be prostitutes, not of trafficking; and that Plaintiff mischaracterizes several of the articles. But ultimately, these additional examples, intended as cumulative notice to ESA of "mounting evidence that sex trafficking at their properties was ongoing and growing," are superfluous here. (ECF No. 11 ¶ 54). The allegations regarding Plaintiff's experience alone are sufficient to establish at least constructive notice.

\* \* \*

In sum, Plaintiff's allegations meet the three-pronged requirement of § 1595's beneficiary theory of liability. *See M.A.* 425 F. Supp. 3d at 971–72 (denying motion to dismiss of hotel parent company defendants where plaintiff pled that defendants controlled employee training, room pricing, provided online booking platform, and conducted inspections).

2. *Perpetrator Liability*

Having concluded that Plaintiff sufficiently alleged that Defendants benefitted from participating in a venture that they knew or should have known was violating § 1591, this Court turns to Plaintiff's allegation that Defendants are liable under § 1595 as perpetrators, not just beneficiaries. Section 1595 incorporates § 1591's criminal liability elements, which include actual

11

knowledge, as opposed to constructive knowledge. As laid out earlier, § 1591(a)(1) "imposes criminal sanctions on 'whoever knowingly' 'recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person'" with knowledge or reckless disregard of the fact that "'means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act.'" *J.M. v. Choice Hotels Int'l, Inc.*, 2023 WL 3456619, at *2 (E.D. Cal. May 15, 2023). As a result, to satisfy § 1591(a)(1) in this context, "plaintiffs must allege defendants knowingly harbored or maintained a person 'with knowledge [or reckless disregard of the fact] that fraud or force would be used to cause her to engage in a commercial sex act.'" *Id.*

To allege a violation of § 1591(a)(2), Plaintiff must allege that Defendants "benefit[], financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1)," and that Defendants also knowingly or recklessly disregarded the fact that threats of force or coercion would be used to cause her to engage in a commercial sex act. Under § 1591, "participation in a venture" requires "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)." § 1591(e)(4). This Court has noted that to be liable under § 1591(a)(2), a defendant must be aware of the venture's "true ends" and commit an "overt act" in furtherance "of the sex trafficking aspect of the venture." *M.A.*, 425 F. Supp. 3d at 969-70.

Defendants largely take issue with what they argue is a lack of specificity in Plaintiff's allegations. They contend that she does not allege any facts demonstrating that Defendants knew she was being trafficked, that she was forced, threatened, or coerced, or that Defendants recklessly disregarded any such coercion. (ECF No. 16 at 15). Furthermore, Defendants argue (without

12

citation) that "simply renting a room that is subsequently used to traffic someone . . . does not qualify as 'harboring' under § 1591(a)(1)" or as an "overt act" in furtherance of sex trafficking, as required by § 1591(a)(2). (*Id.*).

With respect to § 1591(a)(1), this Court concludes that Plaintiff sufficiently alleges that Defendants knowingly harbored or maintained her by alleging that Defendants continued to rent rooms to her trafficker while accepting payments to keep quiet and allow the trafficking the continue. *See United States v. Bhimani*, 2021 WL 5179196, at *9 (M.D. Pa. Nov. 8, 2021) (denying corporation's motion for acquittal of conviction based on employee that "knowingly rented rooms to drug and sex traffickers"). Defendants' insistence that Plaintiff only alleges that they "simply rented a room," totally unaware of the circumstances, is baseless. (*See* ECF No. 11 ¶ 110). And Plaintiff is entitled to the reasonable inference that Defendants knew, or at least recklessly disregarded, that the commercial sex activity was coercive, given the commonsense understanding that the relationship between a pimp and prostitute is so very often coercive. Such an inference is particularly reasonable given that Plaintiff alleges she was indeed coerced, through threats and threats of force. (*Id.* ¶¶ 22-23, 25).

Defendant's arguments with respect to § 1591(a)(2) miss the mark, as well. Defendant's room rentals, coupled with its acceptance of cash bribes to stay quiet, also constitute "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)," § 1591(e)(4), such that it was participating in a venture with Plaintiff's trafficker. Defendants provide neither authority nor reasoning to support the notion that these are not "overt acts," and Plaintiff is entitled to the inference that, based on the circumstances, Defendants had knowledge of the venture's "true

13

ends." And as above, Plaintiff plausibly alleges that Defendants at least recklessly disregarded that the relationship between Plaintiff and her trafficker was a coercive one.

### C. Joint and Several Liability

Finally, Defendants argue that the application of joint and several liability would be inappropriate here because ESA and Best Western, the other hotel at which Plaintiff alleges she was trafficked, "are not alleged to have acted in concert with one another." (ECF No. 16 at 15-16). Plaintiff responds that allegations of joint and several liability are not appropriately challenged by a Rule 12(b)(6) motion such as this one. (ECF No. 39 at 18-20). The TVPRA requires courts to order restitution "in accordance with" 18 U.S.C. § 3664, which in turn allows that "[i]f the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." In other words, "[t]he TVPRA allows the Court to decide whether to impose joint and several liability or several (individual) liability." *Machhal v. Machhal*, 2023 WL 2661107, at *9 (W.D. Mich. Mar. 28, 2023); *see also Leiva v. Clute*, 2020 WL 8514822, at *21 (N.D. Ind. Dec. 16, 2020), *report and recommendation adopted*, 2021 WL 307302 (N.D. Ind. Jan. 29, 2021) (applying the doctrine in a TVPRA case).

But "joint and several liability is a theory of recovery and not a cause of action." *Smith v. EAN Holdings, LLC*, 2019 WL 4118651, at *4 (W.D. Pa. Aug. 29, 2019). Indeed, Plaintiff does not list her allegations that Defendants are jointly and severally liable for her damages under her clearly labeled section, "CAUSES OF ACTION." (*See* ECF No. 11 at 42). Given that no

14

Defendant has even been found liable in this case, it would be premature to preclude joint and several liability at this juncture.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **DENIED.**

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE**

**DATE: August 12, 2024**