## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **JANE DOE (R.A.), an individual,** | : | |
| | : | **Case No. 2:23-cv-3459** |
| **Plaintiff,** | : | |
| | : | **Chief Judge Algenon L. Marbley** |
| **v.** | : | |
| | : | **Magistrate Judge Elizabeth P. Deavers** |
| **BEST WESTERN INTERNATIONAL, INC.,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

## OPINION & ORDER

This matter is before this Court on Defendant Best Western International's ("BWI" or "Best Western") Motion to Dismiss. (ECF No. 19). For the following reasons, Defendant's Motion is hereby **DENIED.**

## I.  BACKGROUND

This case arises under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a). Plaintiff R.A. alleges she met her traffickers when she was seventeen and that for at least eight months, in 2012 and 2013, she was trafficked for sex at several hotels in the Columbus Area, including the Columbus Best Western.  (ECF No. 11 ¶¶ 22, 26).  Plaintiff alleges that her "sexual exploitation repeatedly occurred in rooms of the Columbus Best Western and was facilitated by Best Western and BW Franchisees."  (*Id.* ¶ 27).  She also alleges that "Defendants failed, at all levels, to take appropriate action in response to their knowledge of widespread and ongoing human trafficking in their hotels," and that "they have continued financially benefiting by providing venues for the sexual exploitation of victims like R.A."  (*Id.* ¶ 48).

According to R.A., each stay at the Best Western raised "red flags," that should have been obvious to staff, including, but not limited to: "constant and heavy foot traffic in and out of R.A.'s room involving men who were not hotel guests"; men "entered through the lobby or through a side door," which staff left unlocked "once R.A.'s trafficker began operating" there; "R.A., a teenager, shared a room with her trafficker, who was decades older, and another victim"; while one of the victims was "seeing a john, the other two would wait in the lobby or pool area," which hotel staff permitted until the early morning hours; "R.A.'s trafficker was making payments to hotel staff to keep quiet about the trafficking activity and allow it to continue"; "[r]ooms were paid for with cash or prepaid cards"; and there were "effects on her appearance, demeanor, movements throughout the hotel, and her interactions with her trafficker, hotel staff, and others," such that staff would have been on notice that she was "being continually subjected to coercion, control, and exploitation." (*Id.* ¶¶ 28, 70).  She also explains that her trafficker used the hotel's Wi-Fi to post advertisements for the sale of her body.  (*Id.* ¶ 79(d)).

Plaintiff now seeks to hold BWI liable as a beneficiary of its participation in commercial ventures that it knew, or should have known, violated the TVPRA. Plaintiff commenced this action in October 2023, (ECF No. 1), and filed an Amended Complaint in December 2023 (ECF No. 11). Two weeks later, Defendant filed a Motion to Dismiss. (ECF No. 19). Plaintiff responded, and Defendant replied. (ECF Nos. 38; 44).  The Motion is now ripe for review.

## II.  STANDARD OF REVIEW

This Court may dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual

allegations." *Golden v. City of Columbus*, 404 F. 3d 950, 958–59 (6th Cir. 2005). This Court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F. 3d 430, 434 (6th Cir. 2008). If more than one inference may be drawn from an allegation, this Court must resolve the conflict in favor of the plaintiff. *Mayer v. Mylod*, 988 F. 2d 635, 638 (6th Cir. 1993). This Court cannot dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle [her] to relief." *Id.* The Complaint should also be read as a whole, even if a specific alleged fact read in isolation appears meaningless. *Ricchio v. McLean*, 853 F.3d 553, 557 (1st Cir. 2017).

### III. LAW & ANALYSIS

### A. Improper Party

Defendant BWI argues that it is an improper party to this action because it is not a parent company for BWI-branded hotels, which are independently owned and operated. (ECF No. 19 at 5-6). Defendant BWI's franchise agreement ("The Membership Agreement") states in relevant part:

> The relationship of Best Western to its members is one of an *independent contractor*. Neither party has the power to obligate or bind the other in any way. No relationship of partners, joint ventures or *agents is created*. BEST WESTERN ONLY PROVIDES SERVICES AS DIRECTED BY THE MEMBERSHIP. BEST WESTERN HAS NO CONTROL OVER OR RESPONSIBILITY FOR ANY DECISION AFFECTING THE EMPLOYMENT OR SUPERVISION OF ANY PERSON EMPLOYED IN CONNECTION WITH THE HOTEL.

(ECF No. 19-1 at 4) (emphases added). Based on this language, Defendant BWI maintains that this Court should dismiss the FAC because the Membership Agreement explains that "BWI did not exercise direct or indirect control over the employees who worked at this Hotel . . . and has no

responsibility for the Hotel's operations." (ECF No. 19 at 6). Plaintiff contends that BWI's improper party argument is inappropriate for this stage of litigation, and that that "BWI's self-serving statement in its membership agreement disclaiming legal responsibility for the Columbus Best Western certainly does not dispose of its direct or vicarious liability under the TVPRA." (ECF No. 38 at 7-8).

While this Court can consider BWI's franchise Membership Agreement at the Motion to Dismiss stage, *see McLaughlin v. CNX Gas Co., LLC*, 639 Fed. App'x. 296, 298 (6th Cir. 2016) (explaining that courts may "consider documents that a defendant attaches to a motion if the documents are referred to in the Complaint and are central to her claims without converting the motion to one for summary judgment."), this Court disagrees with Defendant BWI's improper party argument and **DENIES** its request to dismiss this action on that basis. The purpose of a motion to dismiss is to test "the plaintiff's cause of action as stated in the complaint, not [to] challenge [] the plaintiff's factual allegations." *Golden v. City Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). Plaintiff alleges that Defendant promulgates policies, procedures, and standards governing branding, operations, and employee training to which franchisees must adhere, even in ways that go beyond the terms of the membership agreement. (ECF No. 11 ¶¶ 80, 84-85, 89-101). It would be improper for this Court to allow a challenge to these factual allegations at this stage. Nor can the Membership Agreement be read in isolation because it does not provide this Court with sufficient information about Defendant BWI's financial and operational relationship with its franchisees.

## B. Direct Civil Liability Under the TVPRA § 1595

This Court has undertaken extensive analysis of the issue of civil liability of hotel defendants in sex trafficking cases under the TVPRA in several cases with many factual similarities to this one. *See e.g., T.P. v. Wyndham Hotels & Resorts, Inc.*, No. 2:21-cv-04933, 2022 WL 17363234 (S.D. Ohio Dec. 1, 2022); *A.C. v. Red Roof, Inc.*, No. 2:19-cv-4965, 2020 WL 3256261 (S.D. Ohio Jun. 16, 2020); *Doe S.W. v. Lorain-Elyria Motel, Inc.*, No. 2:10-cv-1194, 2020 WL 1244192 (S.D. Ohio Mar. 16, 2020); *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959 (S.D. Ohio 2019); *H.H. v. G6 Hospitality, LLC*, No. 2:19-cv-755, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019).

The TVPRA has two provisions relevant to this case. First, the TVPRA provides for criminal penalties set forth in 18 U.S.C. § 1591:

(a) Whoever knowingly—

(1) in or affecting interstate or foreign commerce, . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a). Secondly, and central to Plaintiff's claim against BWI, is the standard for civil liability under the TVPRA set forth in 18 U.S.C. § 1595:

An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving

5

anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a).

As a preliminary matter, this Court has held in several cases that § 1595(a) can be a standalone claim, and civil defendants need not have committed the underlying criminal sex trafficking offense under § 1591. *M.A.*, 425 F. Supp. 3d at 964; *H.H.*, 2019 WL 6682152 at *2 (citing Cong. Research Serv., R40190, The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (P.L. 110-457): Criminal Law Provisions, at 16 (Jan. 29, 2009) (the amendments to the TVPRA "create[ ] civil liability both for those who face criminal liability for their profiteering and those who do not.")); *Plaintiff A v. Schair*, No. 2:11-cv-00145-WCO, 2014 WL 12495639, at *3 (N.D. Ga. Sept. 9, 2014) (the 2008 amendments broadened the parties who could be sued for trafficking violations from only the perpetrator)). This Court likewise finds that Plaintiff's allegation that she is a victim of trafficking under § 1591 is enough to plead sufficiently that she is "a victim of this chapter" pursuant to § 1595(a) in order to survive a motion to dismiss. (ECF No. 11 ¶ 8).

This Court analyzes Plaintiff's direct civil liability claim under the "beneficiary theory" of § 1595(a). The Plaintiff must plead the following in order to survive a Motion to Dismiss under this theory: (1) the person or entity must "knowingly benefit[], financially or by receiving anything of value"; (2) from participating in a venture; (3) that the "person knew or should have known has engaged in an act in violation of this chapter." § 1595(a). A plaintiff may satisfy these elements by showing that "defendant's own acts, omissions, and state of mind establish each element." *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1060 (D. Colo. 2021).

6

*1. Knowing benefit*

Plaintiff has sufficiently alleged that Defendants "knowingly benefited" financially from a venture in violation of the TVPRA. Plaintiff alleges that Defendants profited through renting rooms to Plaintiff's traffickers. (ECF No. 11 ¶ 87(a)).

This Court has found on several occasions that "the rental of a room constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element of the § 1595(a) standard." *M.A.*, 425 F. Supp. 3d at 965; *see also H.H.*, 2019 WL 6682152 at *2; *see also J.L.*, 521 F. Supp. 3d 1061 (concluding that allegations that a hotel defendant received a percentage of room revenue where trafficking occurred, was sufficient to meet the knowingly benefited element under 18 U.S.C. § 1595(a)); *Gilbert v. U.S. Olympic Comm.*, 423 F. Supp. 3d 1112, 1137 (D. Colo. 2019) (finding the forced labor provision of § 1589(b) does not "require[ ] the party to benefit from the [forced] labor or services for liability to attach"). The same conclusion applies here.

*2. Participation in a venture*

Plaintiff has also alleged sufficient facts to demonstrate that Defendant's conduct constituted "participation in venture" under § 1595(a). This Court has held that participation in a venture under § 1595 does not require actual knowledge of trafficking crimes but requires "at least a showing of a continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement." *M.A.*, 425 F. Supp. 3d at 970 (citing *Jean-Charles*, 937 F. Supp. 2d at 288–89); *see also G.G. v. Salesforce.com, Inc.*, 76 F.4th 544 (7th Cir. 2023) (holding that "the relevant 'venture'" under Section 1595 need not be 'specifically a sex trafficking venture'" and can be a "'commercial venture[]' like running or expanding a business."); *Ricchio*, 853 F.3d

at 555 (finding sufficient allegations that, among other things, the trafficker and hotel owner had prior dealings); *Doe S.W.*, 2020 WL 1244192, at \*6–7 (finding allegations that defendant hotels repeatedly rented rooms to individuals they should have known were traffickers based on the totality of the circumstances, were sufficient to survive a Rule 12(b)(6) motion); *H.H.*, 2019 WL 6682152, at \*4 (same); *A.C.*, 2020 WL 3256261, at \*6 (same). Further, participation in a venture under § 1595 does not require an "overt act." *See e.g., M.A.*, 425 F. Supp. 3d at 968–69.

Plaintiff alleges that Defendant participated in two commercial business ventures. She argues that BWI formed an ongoing business relationship with the traffickers themselves by continuing to rent rooms to them once it should have known about their conduct and by operating the hotel in a way that enabled sex trafficking there. (ECF No. 38 at 9-11). Plaintiff also contends that BWI participated in a commercial venture with its franchisees, which "violated the TVPRA through widespread trafficking at that hotel and by Franchisee's conduct harboring trafficking victims and knowingly facilitating their trafficking." (*Id.* at 11). In Plaintiff's view, Defendant furthered the enterprise through maintaining the franchise relationship despite at least constructive knowledge of the trafficking, and by supporting aspects of operations that it should have known were facilitating trafficking. (*Id.*). Defendant leans heavily on *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021), which this Court has analyzed several times before, to argue that Plaintiff fails to "connect the dots" between her trafficking and BWI, a franchisor defendant. (ECF No. 19 at 9).

Whether Plaintiff has alleged sufficiently the existence of ventures turns on the impact of a franchisor-franchisee relationship between Defendants and the hotel operators. In *Doe #1*, the complaint included allegations that: (1) defendants licensed their brand to franchisees who paid

8

royalties to the defendants and other fees based on a percentage of their room revenue; (2) defendants received a percentage of the revenue generated from the rooms in which trafficking occurred; (3) defendants "owned, managed, supervised, operated, oversaw, controlled the operation of, and/or were inextricably connected to the renting of rooms" at these hotels; (4) defendant franchisors investigated incidents of trafficking at the individual hotels and controlled training related to spotting trafficking; and (5) read online reviews mentioning prostitution and crime occurring generally at the hotels where plaintiffs were trafficked. *Doe #1*, 21 F.4th at 726. On these facts—admittedly similar to the ones *sub judice*—the Eleventh Circuit concluded that plaintiffs failed to allege that "the franchisors participated in a common undertaking involving risk or profit that violated the TVPRA." *Id.* at 726–27.

But this was, in part, because the Eleventh Circuit concluded that plaintiffs had made only conclusory allegations about the franchisor's involvement at the hotels. *Id.* at 727. A claim is plausible when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. And "[w]here the participant provides assistance, support, or facilitation to the trafficker through such a 'continuous business relationship,' a court or jury may infer that the participant and trafficker have a 'tacit agreement' that is sufficient for 'participation' under Section 1595." *G.G.*, 76 F.4th at 559. Here, Plaintiff details at great length the extent of BWI's control over the property, and therefore, plausibly alleges that BWI was so intimately involved in the location's operations that BWI itself participated in a "continuous business relationship" with Plaintiff's traffickers. (ECF No. 11 ¶ 80). Despite the parties' differing allegations about Defendant's operational role in the local hotels, it is not the role of this Court to resolve factual disputes at this stage of the litigation. *M. L. v.*

9

*Craigslist Inc.*, No. C19-6153 BHS-TLF, 2020 WL 6434845, at *6 (W.D. Wash. Apr. 17, 2020), *report and recommendation adopted*, No. C19-6153 BHS-TLF, 2020 WL 5494903 (W.D. Wash. Sept. 11, 2020).

And "[k]ey to the court's reasoning" in *Doe #1* "was how the plaintiffs had chosen to define the alleged venture—specifically as a '*sex trafficking*' venture." *G.G.*, 76 F.4th at 561-62 (emphasis added). But the alleged venture "need not be 'specifically a sex trafficking venture.'" *Id.* at 554. Instead, it can "be a business whose primary focus is not on sex trafficking." *Id.* In *G.G.*, for example, plaintiffs alleged that the defendant, Salesforce, provided advice and software to Backpage, a now-defunct website that hosted advertisements posted by the minor plaintiff's street-level trafficker. *Id.* at 548. The Seventh Circuit concluded that where Backpage had engaged in multiple violations of § 1591, Salesforce had engaged in a venture in violation of § 1595 that "was Backpage's business itself, including the 'growth,' 'expansion,' and profitability of that business." *Id.* at 554.

Here, Plaintiff argues that Defendant was engaged in a business venture with its franchisee that sought to sustain and expand the profitability of the franchise, much like Salesforce sought to advance Backpage's business. (ECF No. 38 ¶ 11-13). And, at least for purposes of stating a claim against BWI, Plaintiff has sufficiently alleged that the franchisee was engaged in violations of § 1591. As relevant here, § 1591 requires the franchisee to have knowingly harbored Plaintiff with at least reckless disregard of the fact that she was being coerced into commercial sex acts. Plaintiff alleges that her trafficker paid staff to stay quiet about her trafficking. (ECF No. 11 ¶ 70(f)). She also alleges that she was indeed coerced, including through threats of violence. (*Id.*

¶¶ 22-23, 25). Therefore, it is at least reasonable to infer that the franchisee acted with reckless disregard to the fact that R.A. was being coerced into commercial sex.

In sum, Plaintiff has sufficiently alleged that BWI participated in ventures with both her traffickers and the franchisee that harbored her.

### 3. Knew or should have known the ventures violated the TVPRA

Plaintiff has plausibly alleged that BWI at least should have known that the ventures in which it was engaged were violating § 1591 during their relationship. A defendant cannot be liable under 18 U.S.C. § 1595(a) unless it "knew or should have known" that the venture from which it benefitted "has engaged in an act in violation of" the TVPRA. Defendants need not have actual knowledge of trafficking crimes for liability to attach, as the language of § 1595(a) demonstrates that constructive knowledge is sufficient. *M.A.*, 425 F. Supp. 3d at 970 (citing *Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276, 288–89 (D. Conn. 2013)).

Defendant contends that Plaintiff has only alleged a generalized awareness of sex trafficking in hotels, which is insufficient to hold it liable; it urges that it must have had actual or constructive knowledge of Plaintiff's trafficking *specifically*. (ECF No. 19 at 9-10). Implicit in this argument is the position that the knowledge or constructive knowledge of hotel staff is irrelevant to Defendant's knowledge. Plaintiff responds that the object of the *mens rea* enumerated in § 1595 is the illegality of the broader venture, not illegality with respect to the victim, and separately, that Defendant's interpretation of "should have known" inappropriately absolves it of any duty to exercise reasonable diligence regarding the activities in which it participated. (ECF No. 38 at 13-14).

11

As a threshold matter, this Court declines to erect an impermeable barrier between the knowledge of hotel staff and BWI's knowledge at this early juncture. Without the benefit of discovery, this Court cannot definitively conclude that the knowledge link between franchisor and franchisee is so tenuous that any knowledge or constructive knowledge possessed by hotel staff is per se irrelevant to Defendants' liability. Indeed, this Court has previously held that notice of "the prevalence of sex trafficking generally at their hotels," the failure "to take adequate steps to train staff in order to prevent its occurrence," and signs that "should have alerted staff to [Plaintiff's] situation" are sufficient to meet the constructive knowledge requirement. *M.A.*, 425 F. Supp. 3d at 968. Seeing similar allegations in the case at hand, this Court reaches the same conclusion.

Therefore, turning first to staff's awareness of Plaintiff's trafficking, this Court is guided in its analysis by two cases that establish the spectrum on which civil liability under the TVPRA can be found. In *Ricchio v. McLean*, the plaintiff alleged that the hotel owner and the trafficker were working together in a sex trafficking scheme evidenced by a "high-five" while discussing "getting this thing going again," a past business relationship between the two, and allegations that one of the hotel owners had gone to the victim's room and "had shown indifference to [plaintiff's] obvious physical deterioration." *Ricchio*, 853 F. 3d at 555. Plaintiff alleged that while "in plain daylight view of the front office of the motel," her trafficker "kick[ed] her and force[d] her back toward the rented quarters when she had tried to escape." *Id.* The Court concluded that the defendants "acted, at least, in reckless disregard" of the nature of the venture for purposes of § 1589 and § 1595. *Id.* at 557.

Conversely, in *Lawson v. Rubin*, plaintiffs sued Blue Icarus, the owner of a condo that it leased to Howard Rubin who was procuring women who he then sexually assaulted and abused at

that location. No. 1:17-cv-6404 (BMC), 2018 WL 2012869, at *2 (E.D.N.Y. Apr. 29, 2018). The court found the plaintiff's allegations of one police visit after a fight ensued and one ambulance sent to the residence in six years insufficient to hold Blue Icarus liable under § 1595. The Court reasoned that even if Blue Icarus had done further investigation following the incidents, it would not have uncovered any more information about the alleged trafficking. *Lawson*, 2018 WL 2012869, at *13–14.

Plaintiff's allegations fall closer to *Ricchio* than to *Lawson*. Plaintiff alleges that her stays at Defendants' property produced repeated "red flags," including payment in cash, cash payments, and large numbers of male visitors. (ECF No. 11 ¶¶ 28, 42). More importantly, Plaintiff alleges that her trafficker routinely paid off staff to ignore signs of her trafficking and made modifications in hotel operations to enable her trafficker's activity. (*Id.* ¶¶ 70(b), 70(f)). This Court has previously concluded that many aspects of Plaintiff's experience should have alerted staff to her trafficking, including cash payments from her traffickers, and frequent male guests. *See M.A.*, 425 F. Supp. 3d at 967; *see also T.P.*, 2022 WL 17363234, at *8-9.

Even if the knowledge of on-the-ground hotel staff cannot be imputed to Defendants, Plaintiff's allegations are sufficient to pass muster under the plausibility standard of a 12(b)(6) motion to dismiss because she also alleges that the franchisor itself should have known about trafficking at the Columbus Best Western. Plaintiffs need not allege that Defendant had knowledge or constructive knowledge with respect to Plaintiff *specifically*. *See G.G.*, 76 F.4th at 555-57. The express terms of the statute impose liability for benefiting from a venture that the Defendant knew or should have known was engaged in violations of § 1591, not violations of § 1591 *with respect to a particular person*. *See* § 1595. And as Plaintiff's point out, the object of the *mens rea*

13

requirement in § 1595 is the venture's illegal conduct, not illegality with respect to the victim. (ECF No. 38 at 13).

Defendant argues that Plaintiff fails to allege any facts that indicate they were on notice of sex trafficking issues at their properties during the relevant period. But Plaintiff posits a persuasive inferential chain establishing at least constructive knowledge against the backdrop of BWI's general awareness of sex trafficking in the hotel industry and its hotels. (ECF No. 38 at 15-16).

R.A. argues that BWI knew or should have known about the above-mentioned "red flags" of trafficking, arising from the trafficking of both her and other earlier and contemporaneous victims, through monitoring of online reviews, news articles, law enforcement activity, its control over staff training, and its policy that staff report all suspected criminal activity to BWI. (ECF No. 38 at 16 (citing ECF No. 11 ¶¶ 61-64, 68-70)). And in comparable environments, courts have found failure to implement policies sufficient to combat a known problem in one's operations constitutes willful blindness or negligence. *See Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 758–79 (1998) (holding where a "supervisor's sexual harassment is outside the scope of employment because the conduct was for personal motives," an employer can still "be liable . . . where its own negligence is a cause of the harassment" because it "knew or should have known about the conduct and failed to stop it").

Because this Court must make all reasonable inferences in favor of the Plaintiff, these allegations pass muster under the 12(b)(6) plausibility standard.

Additionally, the Complaint presents several examples of prostitution-related arrests and one example of attempted intervention by an outside organization, alerting BWI that it "lack[s] programs to deal with child sexual exploitation," prior to Plaintiff's trafficking that should have

14

put BWI on notice of issues within its operation.[1]  Although it is not clear whether these incidents involved non-coercive prostitution or sex trafficking, this Court has considered similar allegations previously and concluded that the plaintiff stated a claim.[2]  For example, in *T.P. v. Wyndham Hotels & Resorts, Inc.*, this Court considered online reviews of the subject hotel that were submitted a year prior to the end of Plaintiff's trafficking and complained of "pimps" and a "prostitution ring."  No. 2:21-CV-04933, 2022 WL 17363234, at *1 (S.D. Ohio Dec. 1, 2022).  There, this Court concluded that T.P.'s "allegations [we]re sufficient to pass muster under the plausibility standard of a 12(b)(6) motion to dismiss because she allege[d] that the franchisors themselves had constructive knowledge of the problem."  *Id.* at *9.  This Court reaches the same conclusion here.

In sum, it can be tempting to get bogged down in minutia when applying the TVPRA, but upon detached, in-depth contemplation, it is evident to this Court that Plaintiff has plausibly alleged that BWI at least should have known of issues in its operation and, in turn, that the specific ventures in which it was allegedly engaged were violating § 1591.

\* \* \*

Because Plaintiff's allegations meet the three-pronged requirement of § 1595, Plaintiff has sufficiently stated a claim that Defendant is directly, civilly liable under the TVPRA.  *See M.A.* 425 F. Supp. 3d at 971–72 (denying motion to dismiss of hotel parent company defendants where

---

[1] Plaintiff explains that "on information and belief, there are additional similar reviews and other customer complaints, including for the Best Western Columbus, from before 2013 that are not currently available on the internet."  (ECF No. 11 ¶ 52).

[2] Plaintiff also alleges that "[t]he relationship between a pimp and a prostitute is inherently coercive, and United States Department of Justice and other agencies and organizations have recognized that most individuals involved in prostitution are subject to force, fraud, and coercion."  (ECF No. 11 ¶ 37).

plaintiff pled that defendants controlled employee training, room pricing, provided online booking platform, and conducted inspections).

### C.  Vicarious Liability

A plaintiff can also satisfy the elements of § 1595's beneficiary theory by imputing "to the defendant the acts, omissions, and state of mind of an agent of the defendant" through indirect or vicarious liability. *J.L.*, 521 F. Supp. 3d at 1060.  The TVPRA, however, does not address the issue of indirect or vicarious liability; therefore, federal district courts that have adjudicated this issue must apply common law to fill in the gaps. *Norfolk Redevelopment and Hous. Auth. v. Chesapeake and Potomac Tel. Co. of Va.*, 464 U.S. 30, 35–36 (1983) (explaining that the traditional rules of statutory construction advise that statutes are presumed not to disturb the common law "unless the language of the statute [is] clear and explicit for this purpose."); *see also In re Nicole Gas Prod., Ltd.*, 581 B.R. 843, 850 (B.A.P. 6th Cir. 2018), *aff'd sub nom., Nicole Gas Prod., Ltd.*, 916 F.3d 566 (6th Cir. 2019) (explaining that statutes are presumed to embrace the common law extant at their enactment). In the past, this Court, and other district courts, have applied the state common law of vicarious liability when addressing indirect liability arguments under the TVPRA. *M.A.*, 425 F. Supp. 3d at 971 (applying Ohio agency law); *see also A.B.*, 455 F. Supp. 3d at 194–95 (applying Pennsylvania agency law); *S.J.*, 473 F. Supp. 3d at 158–59 (applying New York agency law). Since this Court's ruling in 2019, another district court chose to apply the federal common law of vicarious liability in a TVPRA case. *A.B.*, 484 F. Supp. 3d at 939–40 (citing Ninth Circuit cases where the court applied the federal common law of agency when the federal statute did not otherwise provide direction).

16

As this Court has previously outlined, the Sixth Circuit has yet to rule on whether the federal or state common law of vicarious liability should be applied under the TVPRA. *See e.g., T.E. v. Wyndham Hotels & Resorts, Inc.*, 2024 WL 474400, at *8 (S.D. Ohio Feb. 7, 2024). While this Court has previously entertained arguments for both given the nearly identical analysis required under federal and Ohio common law, this Court will proceed under a federal common law analysis of the issue. This approach brings the analysis in line with the Sixth Circuit's approach to applying the federal common law of vicarious liability to federal statutes that do not expressly provide direction on vicarious liability arguments. *See e.g., Marr v. Rife*, 503 F.2d 735, 740–41 (6th Cir. 1974) (explaining that in determining the extent of liability of the owner of a real estate agency for violations of Fair Housing Act by his agent, courts should apply federal law and should not be restricted by respondeat superior law or law of vicarious liability of the various states); *Keating v. Peterson's Nelnet, LLC*, 615 Fed. App'x 365, 371–72 (6th Cir. 2015) (citing *In the Matter of Dish Network, LLC*, 28 FCC Rcd. 6574, 6584 (May 9, 2013)) (explaining that the FCC concluded that defendants may be held vicariously liable for statutory violations under federal common law agency principles, including apparent authority and ratification) *but cf. Pension Benefit Guar. Corp. v. Findlay Indus., Inc., et al.*, 902 F.3d 597, 611 (6th Cir. 2018) (deciding to apply state common law to an ERISA contract dispute regarding successor liability because a federal court may take direction from "the law of the state in which it sits" so long as the standard used "best comports with the interests served by ERISA's regulatory scheme," but explaining that "as a general matter, the court must look to the federal common law and should draw guidance from state common law only when federal common law does not provide an established standard").

### 1. Agency

The Sixth Circuit relies on the Restatement of Agency when applying the federal common law of vicarious liability. *Johansen v. HomeAdvisor, Inc.*, 218 F.Supp.3d 577, 586 (S.D. Ohio 2016). Agency is most commonly defined as the "fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Restatement (Third) of Agency* § 1.01 (2006). A defining element of agency "is the principal's right to control the agent's actions" such as "[t]he power to give interim instructions." *Id.* at cmt. f (1); *see also Savanna Group, Inc. v. Trynex, Inc.*, No. 10-C-7995, 2013 WL 4734004, at *5 (N.D. Ill. Sept. 3, 2012) (explaining that "[t]he power to give interim instruction" is an element that "distinguishes principals in agency relationship from those who contract to receive services provided by persons who are not agents."). As a result of that power, "[a] master is subject to liability for the torts of his servants committed while acting in the scope of their employment." *Burlington Indus. Inc.*, 524 U.S. at 755–56 (1998) (quoting *Restatement (Second) of Agency* § 219(1) (1957)).

While the mere existence of a franchise does not establish an agency relationship, the franchise model also does not preclude wholesale franchisors from vicarious liability under an agency theory. *Bricker*, 804 F.Supp.2d at 623 ("[T]he existence of a franchisor-franchisee relationship between persons does not in itself *preclude* the existence of a principal-agent relationship between them."). To determine whether "a principal-agent relationship exists, courts consider the same factors 'as in the absence of a franchisor-franchisee relationship.'" *Id.* (citing *Taylor v. Checkrite, Ltd.*, 627 F. Supp. 415, 416 (S.D. Ohio 1986)). To succeed under an agency

18

theory, Plaintiff must show both: (1) that Defendant and its franchisees were in an agency relationship; and (2) that hotels or hotel staff are plausibly liable under § 1595(a).

Plaintiff alleges that Defendants exercised day-to-day control over the franchise property at issue here, far beyond the control of a mere franchise relationship. (ECF No. 11 ¶¶ 100-01). Plaintiff argues that this includes, among other things: (1) controlling training of hotel staff; (2) requiring franchisees' participation in centralized services; (3) requiring detailed record-keeping; (4) monitoring and auditing the franchise; (5) supervising the hotel through direct access to a real-time data system; and (6) exerting extensive control over human resources issues like job posting, benefits, and pay. (*Id.*). These allegations are sufficient to meet the pleading standards of Federal Rule of Civil Procedure 8 to demonstrate Defendant's control over the franchisee properties for purposes of an agency relationship and vicarious liability, and Defendant's argument that these allegations are conclusory falls flat.

Plaintiff alleges that the hotel franchisees themselves committed a wrong to be imputed on Defendants. *See J.L. v. Best W. Int'l Inc.*, 521 F. Supp. 3d 1048, 1064-65 (D. Colo. 2021). This Court applies the three-pronged test established by 18 U.S.C. § 1595—and already used to assess Defendant's direct liability—to the hotel franchisees as well: (1) the person or entity must "knowingly benefit[], financially or by receiving anything of value"; (2) from participating in a venture; (3) that the "person knew or should have known has engaged in an act in violation of this chapter." § 1595(a).

First, Plaintiff alleges that the franchisees rented rooms to traffickers and financially benefited from their trafficking ventures, thereby satisfying the first prong. (ECF No. 11 ¶ 87). Second, Plaintiff has alleged sufficient facts that the franchisee participated in a continuous

19

business relationship with Plaintiff's trackers such that it "participated in a venture." (*Id.*). And third, Plaintiff alleges sufficient facts to demonstrate that employees at the hotel had constructive knowledge that she was being trafficked; specifically, that staff would have seen many red flags pointing toward trafficking. (*Id.* ¶¶ 28, 70). Therefore, the beneficiary theory is satisfied with respect to Defendants' franchisee.

### 2. Joint Employer Status

Much like agency theory, whether two employers are a joint employer often turns on how much control one exercises over the other. *See e.g.*, *Int'l Longshoremen's Ass'n, AFL-CIO, Local Union No. 1937 v. Norfolk Southern Corp.*, 927 F.2d 900, 902 (6th Cir. 1991) (articulating test for joint employer status under the NLRA as "the interrelation of operations between the companies, common management, centralized control of labor relations, and common ownership."); *Sanford v. Main Street Baptist Church Manor, Inc.*, 327 Fed. App'x 587, 594 (6th Cir. 2009) (adopting the following test for Title VII joint employer status: "(1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work; (2) the kind of occupation and nature of skill required, including whether skills are obtained in the work place; (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations; (4) method and form of payment and benefits; and (5) length of job commitment and/or expectations."). "While the factors this Court must consider when analyzing both agency and joint employer theories of vicarious liability are very similar, important among those to establish a joint employer theory of vicarious liability is the control exercised by the franchisor specific to employment policies." *B.D.G.*, 2023 WL 5935646, at *10.

20

Plaintiff alleges that "Best Western and Defendant BW Franchisees shared control of the terms and conditions of the employment of staff at the subject Columbus Best Western." (ECF No. 11 ¶ 99). Defendants argue, however, that Plaintiff fails to allege sufficient employment-related control over the franchise location, and that the Membership Agreement contradicts Plaintiff's allegations. Ultimately, because Plaintiff alleges that Defendant posts all hotel jobs on their websites, controls employee training, and provides employee benefits, among other things, she has sufficiently pleaded a joint employer theory against BWI. *A.R.*, 2022 WL 17741054, at *11 (finding joint employer theory of vicarious liability sufficiently pleaded where Plaintiff pled that Wyndham promulgated "policies, procedures, and standards governing the hiring, training, retention, and advancement of on-the-ground employees and setting their rates of pay."). As discussed above, the Membership Agreement alone cannot resolve these factual questions.

### IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **DENIED.**

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATE: August 16, 2024**