**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| R.A., an individual, | : | |
| | : | **Case No. 2:23-cv-3459** |
| Plaintiff, | : | |
| | : | **Judge Algenon L. Marbley** |
| v. | : | |
| | : | **Magistrate Judge Elizabeth P. Deavers** |
| BEST WESTERN INTERNATIONAL, INC., *et al.*, | : | |
| | : | |
| Defendants. | : | |

**OPINION & ORDER**

This matter comes before this Court on Defendant Defendants Janaki Inc. ("Janaki"); Alliance Hospitality Inc. ("Alliance"); and Witness Investment, LLC's ("Witness") (collectively, ("Franchisees") Motion to Dismiss Plaintiff R.A.'s Amended Complaint (ECF No. 50); Defendant Best Western International, Inc.'s ("BWI") Motion for Leave to File Supplemental Brief in Support of Motion to Dismiss (ECF No. 52); and Erie Insurance Exchange's ("Erie") Motion for Leave to Intervene (ECF No. 54). For the reasons that follow, Franchisees' Motion to Dismiss (ECF No. 50) and Erie's Motion for Leave to Intervene (ECF No. 54) are **DENIED**; and BWI's Motion for Leave to File Supplemental Brief (ECF No. 52) is **DENIED AS MOOT.**

**I. BACKGROUND**

This case arises under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a). Plaintiff R.A. alleges she met her traffickers when she was seventeen and that for at least eight months, in 2012 and 2013, she was trafficked for sex at several hotels in the Columbus Area, including the Columbus Best Western ("Columbus BWI"). (ECF No. 11 ¶¶ 22, 26). Plaintiff alleges that her "sexual exploitation repeatedly occurred in rooms of the Columbus

Best Western and was facilitated by Best Western and BW Franchisees." (*Id.* ¶ 27). She also alleges that "Defendants failed, at all levels, to take appropriate action in response to their knowledge of widespread and ongoing human trafficking in their hotels," and that "they have continued financially benefiting by providing venues for the sexual exploitation of victims like R.A." (*Id.* ¶ 48).

According to R.A., each stay at the Best Western raised "red flags," that should have been obvious to staff, including, but not limited to: "constant and heavy foot traffic in and out of R.A.'s room involving men who were not hotel guests"; men "entered through the lobby or through a side door," which staff left unlocked "once R.A.'s trafficker began operating" there; "R.A., a teenager, shared a room with her trafficker, who was decades older, and another victim"; while one of the victims was "seeing a john, the other two would wait in the lobby or pool area," which hotel staff permitted until the early morning hours; "R.A.'s trafficker was making payments to hotel staff to keep quiet about the trafficking activity and allow it to continue"; "[r]ooms were paid for with cash or prepaid cards"; and there were "effects on her appearance, demeanor, movements throughout the hotel, and her interactions with her trafficker, hotel staff, and others," such that staff would have been on notice that she was "being continually subjected to coercion, control, and exploitation." (*Id.* ¶¶ 28, 70). She also explains that her trafficker used the hotel's Wi-Fi to post advertisements for the sale of her body. (*Id.* ¶ 79(d)).

Plaintiff now seeks to hold BWI and its franchisees, Janaki Inc. ("Janaki"); Alliance Hospitality Inc. ("Alliance"); and Witness Investment LLC (collectively, "Franchisees"), liable as beneficiaries of their participation in commercial ventures that they knew, or should have known, violated the TVPRA. Plaintiff commenced this action in October 2023, (ECF No. 1), and filed an

Amended Complaint in December 2023 (ECF No. 11). Two weeks later, Defendants BWI and Extended Stay America, Inc., ESA P Portfolio LLC, and ESH Hospitality's ("ESA") filed Motions to Dismiss (ECF Nos. 16, 19), and BWI moved to file a supplemental brief in support of its motion (ECF No. 53). This Court denied the motions to dismiss in August 2024 (ECF Nos. 72, 73).[1]

On March 7, 2024, Franchisees filed a Motion to Dismiss (ECF No. 50), and Erie moved to intervene (ECF No. 54). Plaintiff opposed the motions. (ECF Nos. 53, 57). Erie filed a reply in support of intervention (ECF No. 59). Franchisees did not file a reply, and the time to do so has passed. The Motions are now ripe for review.

## II. STANDARD OF REVIEW

### A. Motion to Dismiss

A district court may dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). In ruling on a 12(b)(6) motion, a court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). If more than one inference may be drawn from an allegation, the court must resolve the conflict for the plaintiff. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). The court cannot dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*.

---

[1] In light of this Court's Order denying BWI's Motion to Dismiss (ECF No. 73), in which the Court rejected BWI's request to wade into fact-based improper party arguments, BWI's motion to supplement its briefing (ECF No. 52) is hereby **DENIED AS MOOT**.

The court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although liberal, Rule 12(b)(6) requires more than bare assertions of legal conclusions. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). To survive dismissal, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A claim is plausible when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### B. Motion to Intervene

A district court may grant a motion to intervene as a matter of right, Fed. R. Civ. P. 24(a), or as a matter of discretion, Fed. R. Civ. P. 24(b). Under Rule 24(a)(2), a court *must* grant intervention on a "timely motion" to a movant who "claims an interest relating to the property or transaction which is the subject of the action," and is "so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Permissive intervention under Rule 24(b), on the other hand, authorizes a court to exercise its discretion to permit intervention on a timely motion by a movant who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(2).

## III. LAW & ANALYSIS

### A. Franchisees' Motion to Dismiss (ECF No. 50)

Defendants argue that Plaintiff's complaint "is devoted to 'factual' allegations against all Defendants" and "incorrectly conflates Best Western and these Defendants so as to impute to these Defendants, knowledge of potential sex trafficking incidents from different Best Western-branded locations simply because Janaki and Alliance were Best Western franchisees." (ECF No. 51 at 2). According to Defendants, "Plaintiff's allegations of trafficking at Best Western hotels in Massachusetts, Tennessee, Georgia, Virginia, and Washington are all incidents that allegedly occurred at facilities that have no relationship to the Best Western Columbus and Alliance and Janaki, independent franchisees." (*Id.*).

As this Court has observed, "group pleading," i.e., the practice of attempting to attribute wrongdoing to a group of defendants without differentiating which defendant was involved in the unlawful conduct, has generally been found improper in cases involving fraud, which apply Fed. R. Civ. P. 9(b)'s specificity requirements; or cases asserting violations of securities laws or regulations, which likewise utilize heightened pleading standards.[2] *See M.A. v. Wyndham Hotels*

---

[2] Courts have also rejected group pleading in the 42 U.S.C. § 1983 context, reasoning that liability under § 1983 arises only upon a showing of personal participation by the defendant. *See Harris v. City of Akron*, No. 5:23-CV-01290, 2024 WL 97342, at *4 n. 47 (N.D. Ohio Jan. 9, 2024) ("Courts in the Sixth Circuit disfavor [] 'group pleading' to establish 42 U.S.C. § 1983 liability." (citing *Robertson v. Univ. of Akron Sch. of Law*, Case No. 5:20-cv-1907, 2021 WL 3709915, at *6-7 (N.D. Ohio Aug 20, 2021) (collecting cases))); *Wood v. Washburn*, No. 23-35041, 2025 WL 66046, at *2 (9th Cir. Jan. 10, 2025). *But see Kesterson v. Moritsugu*, 149 F.3d 1183 (6th Cir. 1998) (noting "the Supreme Court's displeasure with lower courts placing heightened burdens on civil rights plaintiffs in the absence of any support in the rules or statutes for so doing. As the *Leatherman* court reasoned, such a heightened pleading requirement is incompatible with the notice pleading

*& Resorts, Inc.*, 425 F. Supp. 3d 959, 973 (S.D. Ohio 2019); *A.R. v. Wyndham Hotels & Resorts, Inc.*, No. 2:21-CV-04935, 2022 WL 17741054, at *11 (S.D. Ohio Dec. 16, 2022) Since none of those heightened requirements applies here, however, Rule 8's more liberal pleading standards govern. To satisfy Federal Rule of Civil Procedure 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this rule is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Plaintiff here alleges that during the trafficking period, Janaki, Inc., and Alliance Hospitality Inc., operated as franchisees of the Columbus Best Western, and names Witness Investment, LLC, as a defendant "because it is a successor in liability to Alliance Hospitality, Inc. and, therefore, all references to it include the acts and omissions of its successor, which it is liable." (*See* ECF No. 53 at 2 n.1 (citing ECF No. 11 ¶ 14)).

Plaintiff's allegations are sufficient to provide these Defendants with adequate notice as to the TVPRA claims against them. This Court has undertaken extensive analysis of the issue of civil liability of hotel defendants in sex trafficking cases under the TVPRA in several cases with many factual similarities to this one. *See e.g., T.P. v. Wyndham Hotels & Resorts, Inc.*, No. 2:21-cv-04933, 2022 WL 17363234 (S.D. Ohio Dec. 1, 2022); *A.C. v. Red Roof, Inc.*, No. 2:19-cv-4965, 2020 WL 3256261 (S.D. Ohio Jun. 16, 2020); *Doe S.W. v. Lorain-Elyria Motel, Inc.*, No. 2:10-cv-1194, 2020 WL 1244192 (S.D. Ohio Mar. 16, 2020); *M.A.*, 425 F. Supp. 3d 959; *H.H. v. G6 Hospitality, LLC*, No. 2:19-cv-755, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019).

---

requirement of Rule 8(a)(2)." (citing *Leatherman v. Tarrant County Narcotics Intel. and Coordination Unit*, 507 U.S. 163 (1993)).

The TVPRA has two provisions relevant to this case. First, the TVPRA provides for criminal penalties set forth in 18 U.S.C. § 1591:

(a) Whoever knowingly—

(1) in or affecting interstate or foreign commerce, . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a). Secondly, and central to Plaintiff's claim against BWI, is the standard for civil liability under the TVPRA set forth in 18 U.S.C. § 1595:

An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a).

As a preliminary matter, this Court has held in several cases that § 1595(a) can be a standalone claim, and civil defendants need not have committed the underlying criminal sex trafficking offense under § 1591. *M.A.*, 425 F. Supp. 3d at 964; *H.H.*, 2019 WL 6682152 at *2 (citing Cong. Research Serv., R40190, The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (P.L. 110-457): Criminal Law Provisions, at 16 (Jan. 29, 2009) (the amendments to the TVPRA "create[ ] civil liability both for those who face criminal liability for

7

their profiteering and those who do not.")); *Plaintiff A v. Schair*, No. 2:11-cv-00145-WCO, 2014 WL 12495639, at \*3 (N.D. Ga. Sept. 9, 2014) (the 2008 amendments broadened the parties who could be sued for trafficking violations from only the perpetrator)). This Court likewise finds that Plaintiff's allegation that she is a victim of trafficking under § 1591 is enough to plead sufficiently that she is "a victim of this chapter" pursuant to § 1595(a) in order to survive a motion to dismiss. (ECF No. 11 ¶ 8).

This Court analyzes Plaintiff's direct civil liability claim under the "beneficiary theory" of § 1595(a). The Plaintiff must plead the following in order to survive a Motion to Dismiss under this theory: (1) the person or entity must "knowingly benefit[], financially or by receiving anything of value"; (2) from participating in a venture; (3) that the "person knew or should have known has engaged in an act in violation of this chapter." § 1595(a). A plaintiff may satisfy these elements by showing that "defendant's own acts, omissions, and state of mind establish each element." *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1060 (D. Colo. 2021). As explained below, Plaintiff's allegations are sufficient to survive a Rule 12(b) motion. First, Plaintiff alleges that the franchisees rented rooms to traffickers and financially benefited from their trafficking ventures, thereby satisfying the first prong. (ECF No. 11 ¶ 87). Second, Plaintiff has alleged sufficient facts that the franchisee participated in a continuous business relationship with Plaintiff's trackers such that it "participated in a venture." (*Id.*). And third, Plaintiff alleges sufficient facts to demonstrate that employees at the hotel had constructive knowledge that she was being trafficked; specifically, that staff would have seen many red flags pointing toward trafficking. (*Id.* ¶¶ 28, 70). Therefore, the beneficiary theory is satisfied with respect to Franchisees.

8

*1. Knowing benefit*

Plaintiff has sufficiently alleged that Defendants "knowingly benefited" financially from a venture in violation of the TVPRA. Plaintiff alleges that Defendants profited through renting rooms to Plaintiff's traffickers. (ECF No. 11 ¶¶ 87–88).

This Court has found on several occasions that "the rental of a room constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element of the § 1595(a) standard." *M.A.*, 425 F. Supp. 3d at 965; *see also H.H.*, 2019 WL 6682152 at *2; *see also J.L.*, 521 F. Supp. 3d 1061 (concluding that allegations that a hotel defendant received a percentage of room revenue where trafficking occurred, was sufficient to meet the knowingly benefited element under 18 U.S.C. § 1595(a)); *Gilbert v. U.S. Olympic Comm.*, 423 F. Supp. 3d 1112, 1137 (D. Colo. 2019) (finding the forced labor provision of § 1589(b) does not "require[ ] the party to benefit from the [forced] labor or services for liability to attach"). The same conclusion applies here.

*2. Participation in a venture*

Plaintiff has also alleged sufficient facts to demonstrate that Defendants' conduct constituted "participation in venture" under § 1595(a). This Court has held that participation in a venture under § 1595 does not require actual knowledge of trafficking crimes but requires "at least a showing of a continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement." *M.A.*, 425 F. Supp. 3d at 970 (citing *Jean-Charles*, 937 F. Supp. 2d at 288–89); *see also G.G. v. Salesforce.com, Inc.*, 76 F.4th 544 (7th Cir. 2023) (holding that "the relevant 'venture'" under Section 1595 need not be 'specifically a sex trafficking venture'" and can be a "'commercial venture[]' like running or expanding a business."); *Ricchio*, 853 F.3d at 555

9

(finding sufficient allegations that, among other things, the trafficker and hotel owner had prior dealings); *Doe S.W.*, 2020 WL 1244192, at *6–7 (finding allegations that defendant hotels repeatedly rented rooms to individuals they should have known were traffickers based on the totality of the circumstances, were sufficient to survive a Rule 12(b)(6) motion); *H.H.*, 2019 WL 6682152, at *4 (same); *A.C.*, 2020 WL 3256261, at *6 (same). Further, participation in a venture under § 1595 does not require an "overt act." *See e.g., M.A.*, 425 F. Supp. 3d at 968–69.

Plaintiff alleges that Defendants participated in two commercial business ventures. She argues that Franchisees formed an ongoing business relationship with the traffickers themselves by continuing to rent rooms to them once they should have known about their conduct and by operating the hotel in a way that enabled sex trafficking there. (ECF No. 11 ¶¶ 26, 70, 77-79, 87). Plaintiff also contends that Franchisees participated in a commercial venture with BWI "with a shared objective of maximizing revenue and in a way that they knew or should have known was facilitating widespread and ongoing sex trafficking at the hotel, including R.A.'s trafficking." (ECF No. 53 (citing ECF No. 11 ¶ 88)). Defendants nonetheless argue that Plaintiff fails to allege that "these Defendants participated in or furthered the sex-trafficking venture that involved Plaintiff" or "that representatives from Janaki, Alliance, or Witness Investment knew Plaintiff's trafficker, knew Plaintiff herself, or took any overt action to further a sex-trafficking scheme." (ECF No. 51 at 6).

This Court has previously held, however, the alleged venture under the TVPRA "need not be 'specifically a sex trafficking venture.'" (*See* ECF No. 73 at 10 (quoting *G.G.*, 76 F.4ᵗʰ at 554)). "Instead, it can 'be a business whose primary focus is not on sex trafficking.'" (*Id.* (quoting *G.G.*, 76 F.4ᵗʰ at 554)). In *G.G.*, for example, plaintiffs alleged that the defendant, Salesforce, provided

advice and software to Backpage, a now-defunct website that hosted advertisements posted by the minor plaintiff's street-level trafficker. *Id.* at 548. The Seventh Circuit concluded that where Backpage had engaged in multiple violations of § 1591, Salesforce had engaged in a venture in violation of § 1595 that "was Backpage's business itself, including the 'growth,' 'expansion,' and profitability of that business." *Id.* at 554.

Here, Plaintiff argues that Defendants were engaged in a business venture with their franchisors that sought to sustain and expand the profitability of the franchise, much like Salesforce sought to advance Backpage's business. (ECF No. 11 ¶¶ 12–15). And, at least for purposes of stating a claim against Franchisees, Plaintiff has sufficiently alleged that they were engaged in violations of § 1591. As relevant here, § 1591 requires the franchisee to have knowingly harbored Plaintiff with at least reckless disregard of the fact that she was being coerced into commercial sex acts. Plaintiff alleges that her trafficker paid staff to stay quiet about her trafficking. (ECF No. 11 ¶ 70(f)). She also alleges that she was indeed coerced, including through threats of violence. (*Id.* ¶¶ 22-23, 25). Therefore, it is at least reasonable to infer at this stage that the Franchisees acted with reckless disregard to the fact that R.A. was being coerced into commercial sex.

In sum, Plaintiff has sufficiently alleged that Franchisees participated in ventures with both her traffickers and BWI as the franchisor.

### 3. *Knew or should have known the ventures violated the TVPRA*

Plaintiff has plausibly alleged that Franchisees at least should have known that the ventures in which it was engaged were violating § 1591 during their relationship. A defendant cannot be liable under 18 U.S.C. § 1595(a) unless it "knew or should have known" that the venture from which it benefitted "has engaged in an act in violation of" the TVPRA. Defendants need not have

11

actual knowledge of trafficking crimes for liability to attach, as the language of § 1595(a) demonstrates that constructive knowledge is sufficient. *M.A.*, 425 F. Supp. 3d at 970 (citing *Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276, 288–89 (D. Conn. 2013)).

Defendants contend that Plaintiff "relies upon broad opinions that all hospitality groups should be aware of sex trafficking" and that she makes "conclusory allegations that all of the hotels should have noticed signs of trafficking or taken preventative steps," without asserting any "specific allegations of any incident where an employee of Janaki, Alliance, or Witness Investment observed Plaintiff or had evidence that Plaintiff was being trafficked at the Columbus Best Western." (ECF No. 51 at 5). The express terms of the statute, however, impose liability for benefiting from a venture that the Defendants knew or should have known was engaged in violations of § 1591, not violations of § 1591 *with respect to a particular person. See* § 1595. And as Plaintiff's point out, the object of the *mens rea* requirement in § 1595 is the venture's illegal conduct, not illegality with respect to the victim.  (ECF No. 38 at 13).

Turning first to staff's awareness of Plaintiff's trafficking, this Court is guided in its analysis by two cases that establish the spectrum on which civil liability under the TVPRA can be found.  In *Ricchio v. McLean*, the plaintiff alleged that the hotel owner and the trafficker were working together in a sex trafficking scheme evidenced by a "high-five" while discussing "getting this thing going again," a past business relationship between the two, and allegations that one of the hotel owners had gone to the victim's room and "had shown indifference to [plaintiff's] obvious physical deterioration." *Ricchio*, 853 F. 3d at 555. Plaintiff alleged that while "in plain daylight view of the front office of the motel," her trafficker "kick[ed] her and force[d] her back toward the rented quarters when she had tried to escape." *Id.* The Court concluded that the

12

defendants "acted, at least, in reckless disregard" of the nature of the venture for purposes of §§ 1589 and § 1595. *Id.* at 557.

Conversely, in *Lawson v. Rubin*, plaintiffs sued Blue Icarus, the owner of a condo that it leased to Howard Rubin who was procuring women who he then sexually assaulted and abused at that location. No. 1:17-cv-6404 (BMC), 2018 WL 2012869, at *2 (E.D.N.Y. Apr. 29, 2018). The court found the plaintiff's allegations of one police visit after a fight ensued and one ambulance sent to the residence in six years insufficient to hold Blue Icarus liable under § 1595. The Court reasoned that even if Blue Icarus had done further investigation following the incidents, it would not have uncovered any more information about the alleged trafficking. *Lawson*, 2018 WL 2012869, at *13–14.

Plaintiff's allegations fall closer to *Ricchio* than to *Lawson*. Plaintiff alleges that her stays at Defendants' property produced repeated "red flags," including cash payments and large numbers of male visitors. (ECF No. 11 ¶¶ 28, 42). More importantly, Plaintiff alleges that her trafficker routinely paid off staff to ignore signs of her trafficking and made modifications in hotel operations to enable her trafficker's activity. (*Id.* ¶¶ 70(b), 70(f)). This Court has previously concluded that many aspects of Plaintiff's experience should have alerted staff to her trafficking, including cash payments from her traffickers, and frequent male guests. *See M.A.*, 425 F. Supp. 3d at 967; *see also T.P.*, 2022 WL 17363234, at *8-9.

Contrary to Defendants' arguments, Plaintiff sufficiently alleges that Franchisees' hotel staff knew or had reason to know about R.A.'s trafficking given the red flags they observed (*see* ECF No. 11 ¶¶ 26–28, 70–71), and their relationships with R.A.'s traffickers, including "their

active assistance of those traffickers, such as by accepting cash payments and allowing them to keep a previously locked door unlocked." (*See* ECF No. 53 (citing ECF No. 11 ¶ 70)).

Moreover, R.A.'s complaint alleges Defendants knew or should have known about the "red flags" of trafficking through monitoring of online reviews, news articles, law enforcement activity, its control over staff training, and hotel policies that staff report all suspected criminal activity. (ECF No. 11 ¶¶ 61-64, 68-70). This Court has previously held that notice of "the prevalence of sex trafficking generally at their hotels," the failure "to take adequate steps to train staff in order to prevent its occurrence," and signs that "should have alerted staff to [Plaintiff's] situation" are sufficient to meet the constructive knowledge requirement. *M.A.*, 425 F. Supp. 3d at 968. Seeing similar allegations in the case at hand (ECF No. 11 ¶¶ 61-64, 68-70), this Court reaches the same conclusion.

In comparable environments, courts have also found failure to implement policies sufficient to combat a known problem in one's operations constitutes willful blindness or negligence. *See Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 758–79 (1998) (holding where a "supervisor's sexual harassment is outside the scope of employment because the conduct was for personal motives," an employer can still "be liable . . . where its own negligence is a cause of the harassment" because it "knew or should have known about the conduct and failed to stop it"). Because this Court must make all reasonable inferences in favor of the Plaintiff at this stage, these allegations pass muster under the 12(b)(6) plausibility standard.

Additionally, the Complaint presents several examples of prostitution-related arrests and one example of attempted intervention by an outside organization, alerting BWI that it "lack[s] programs to deal with child sexual exploitation," prior to Plaintiff's trafficking that should have

14

put BWI on notice of issues within its operation.[3]  Although it is not clear whether these incidents involved non-coercive prostitution or sex trafficking, this Court has considered similar allegations previously and concluded that the plaintiff stated a claim.[4]

In sum, it is easy to get duped by the Siren-like allure of minutia when applying the TVPRA, but upon detached, in-depth contemplation, it is evident to this Court that Plaintiff has plausibly alleged that BWI at least should have known of issues in its operation and, in turn, that the specific ventures in which it was allegedly engaged were violating § 1591.

* * *

Because Plaintiff's allegations meet the three-pronged requirement of § 1595, Plaintiff has sufficiently stated a claim that Defendant is directly, civilly liable under the TVPRA.  *See M.A.* 425 F. Supp. 3d at 971–72 (denying motion to dismiss of hotel parent company defendants where plaintiff pled that defendants controlled employee training, room pricing, provided online booking platform, and conducted inspections). Accordingly, Franchisee Defendants' Motion to Dismiss (ECF No. 50) is **DENIED**.

### B.  Motion to Intervene (ECF No. 54)

Erie seeks intervention as of right under Fed. R. Civ. P. 24(a) and permissive intervention under Fed. R. Civ. P. 24(b). The threshold issue for both kinds of intervention is timeliness. *Blount-Hill v. Zelman*, 636 F.3d 278, 283−84, 287 (6th Cir. 2011). In evaluating whether a motion to intervene is timely, this Court considers: (1) the point to which the suit has progressed; (2) the

---

[3] Plaintiff explains that "on information and belief, there are additional similar reviews and other customer complaints, including for the Best Western Columbus, from before 2013 that are not currently available on the internet."  (ECF No. 11 ¶ 52).

[4] Plaintiff also alleges that "[t]he relationship between a pimp and a prostitute is inherently coercive, and United States Department of Justice and other agencies and organizations have recognized that most individuals involved in prostitution are subject to force, fraud, and coercion."  (ECF No. 11 ¶ 37).

purpose for which intervention is sought; (3) the length of time preceding the motion during which the intervenor knew or reasonably should have known of her interest in the case; (4) the prejudice to the original parties due to the intervenor's failure to seek intervention sooner after recognizing her interest was implicated; and (5) any unusual circumstances weighing for or against intervention. *Stupak-Thrall v. Glickman*, 226 F.3d 467, 473 (6th Cir. 2000) (citing *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir.1990)). No single factor is determinative. *Id.* Rather, timeliness "should be evaluated in the context of all relevant circumstances." *Id*. at 472−73 (citing *Jansen*, 904 F.2d at 340).

Erie argues that its motion is timely because "there are currently no case dates set in this matter." (ECF No. 54 at 5). Notwithstanding the parties' minimal discussion of timeliness,[5] this Court finds Erie's motion timely. As explained below, however, the motion fails for other reasons.

### 1.  Intervention as of Right

The Sixth Circuit has interpreted mandatory intervention under Rule 24(a) as requiring four elements, "each of which must be satisfied before intervention as of right will be granted": (1) timeliness of the application to intervene, (2) a substantial legal interest in the case, (3) impairment of the  movant's ability to protect that interest in the absence of intervention, and (4) inadequate representation of that interest by the parties already before the court. *Stupak-Thrall*, 226 F.3d at 471 (internal quotation marks and citation omitted). A "failure to meet one of the criteria will require that the motion to intervene be denied." *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989) (quoting *Triax Co. v. TRW Inc.*, 724 F.2d 1224, 1227 (6th Cir. 1984)).

---

[5] Plaintiff's opposition does not challenge the timeliness of Erie's motion. (See ECF No. 57 at 5 ("[E]ven assuming the Motion is timely, Erie fails to establish the next three elements of the four-part test.").

Having already determined that Erie's motion is timely, this Court considers the remaining elements, beginning with Erie's substantial legal interest. *Stupak-Thrall*, 226 F.3d at 471. While the Sixth Circuit interprets the interest sufficient to invoke intervention of right expansively, not "any articulated interest will do." *Coal. to Def. Affirmative Action v. Granholm*, 501 F.3d 775, 780 (6th Cir. 2007). The analysis addressing the existence of a substantial legal interest "is necessarily fact-specific." *Id*. An entity seeking to intervene must have a substantial and direct interest in a proceeding, not simply a contingent one. *See Cascade Nat. Gas Corp. v. El Paso Nat. Gas Co.*, 386 U.S. 129, 154 (1967) (noting that a proposed intervenor must have an interest that is "sufficiently direct and immediate to justify his entry as a matter of right."); *see also Adams v. Ohio Univ.*, No. 2:17-CV-200, 2017 WL 4618993, at *2 (S.D. Ohio Oct. 16, 2017) (same).

According to Erie, it has "extended a defense to Alliance Hospitality, Inc. and Janaki, Inc. under a reservation of rights for R.A.'s claims, pursuant to the insurance contracts between Erie and Alliance Hospitality, Inc. and Janaki, Inc." (ECF No. 54 at 2 –3). Erie argues that it has a substantial legal interest in the case "as it is incurring defense costs." (ECF No. 54 at 6). According to Erie, this is "not a hypothetical or contingent interest; it is a real and direct interest." (*Id.*).

As this Court held in similar cases, Erie's interests are contingent because they depend on both: (1) Defendants' liability under the TVPRA; and (2) Erie's obligations to Defendants under the relevant insurance contracts. *See S.R. v. Wyndham Hotels & Resorts, Inc.*, No. 2:23-CV-1731, 2024 WL 2795784, at *2 (S.D. Ohio May 31, 2024) (agreeing that, "because [hotel defendant's] liability has not yet been determined and Erie has not accepted coverage for [hotel defendant's] conduct, its interest is only a contingent one"); *Siding and Insulation Co. v. Beachwood Hair*

*Clinic, Inc.*, No. 1:11-cv-01074, 2012 WL 645996, at *1 (N.D. Ohio Feb. 28, 2012) (insurer's interest was not direct nor substantial because it was contingent on the outcome of the litigation).

That Erie seeks to litigate state law contract claims that do not directly relate to the subject of Plaintiff's TVPRA claims also weighs against intervention as a matter of right. *See M.A. v. Wyndham Hotels & Resorts, Inc.*, No. 2:19-CV-00849, 2022 WL 622124, at *3 (S.D. Ohio Mar. 3, 2022) (holding that "failure to allege a direct and substantial interest in the subject of the litigation is alone fatal to [the insurer's] claim for intervention as of right"). Resolution of those distinct issues will also "necessarily [] involve the application of different laws and the presentation of different evidence." *Adams*, 2017 WL 4618993, at *2. Insurers may not "drag substantive issues of insurance law into a lawsuit whose subject matter is the allocation of liability." *Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 640 (1st Cir. 1989).

Indeed, this Court routinely denies intervention to insurers contesting potential coverage in hotel sex trafficking cases, finding their interests contingent and unrelated to the underlying TVPRA claims. *See S.R.*, 2024 WL 2795784, at *2 (denying intervention because "Erie's interests here are contingent, as they are dependent on a determination of both: (1) [hotel defendant's] liability under the TVPRA; and (2) Erie's obligations to [hotel defendant] under the relevant insurance contracts."); *T.E. v. Wyndham Hotels & Resorts, Inc.*, No. 2:22-CV-3185, 2024 WL 474400, at *13 (S.D. Ohio Feb. 7, 2024) (denying intervention reasoning that the insurer's "stake in this litigation is dependent on a determination of Red Roof's liability and an adjudication of [the insurer's] obligations under the insurance contract, which are separate from [plaintiff's] TVPRA claim."); *K.C. v. Choice Hotels Int'l, Inc.*, No. 22-CV-2683, 2023 WL 2265214, at *2 (S.D. Ohio Feb. 28, 2023) (same); *M.A.*, 2022 WL 622124, at *2 (S.D. Ohio Mar. 3, 2022) (same); *see also*

18

*Adams*, 2017 WL 4618993, at *2 (finding that an insurer's interest is contingent until the insurer "knows whether or not it owes a duty to defend and/or indemnify" an insured).

Because Erie has not demonstrated the requisite direct and substantial legal interest in the subject matter of this litigation, it is not entitled to intervene as a matter of right. For that reason, this Court finds it unnecessary to reach the merits of the other elements of intervention of right under Rule 24(a). *See Brewer v. Republic Steel Corporation*, 513 F.2d 1222, 1224 (6th Cir. 1975) ("Since we conclude that the Commission has not satisfied the interest requirement of Rule 24(a), we need not consider the other prerequisites to intervention as a matter of right.").

### 2.  *Permissive Intervention*

Unlike mandatory intervention, permissive intervention under Rule 24(b) establishes a "zone of discretion" within which a court operates. *See Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1248 (6th Cir. 1997). If the motion is timely and there is at least one common question of law or fact, this Court may grant intervention based on relevant factors such as undue delay or prejudice to the original parties. *United States v. Michigan*, 424 F. 3d 438, 445 (6th Cir. 2005); *Shy v. Navistar Intern. Corp.*, 291 F. R. D. 128, 138 (S.D. Ohio 2013).

A motion for permissive intervention "should be denied," however, "where the intervenor has not established that a common question of law or fact exists between [its] proposed claim and the claim of one or more of the existing parties." *Comtide Holdings, LLC v. Booth Creek Mgt. Corp.*, No. 2:07-cv-1190, 2010 WL 2670853, at *3 (S.D. Ohio Jun. 29, 2010); *see also Design Basics, LLC v. A.J. Bokar Bldg. Co., Inc.*, No. 16-cv-669, 2016 WL 6067780, at *2 (N.D. Ohio Oct. 17, 2016) (The insurer "cannot establish that its insurance action shares questions of law and fact with the underlying copyright action"); *Trs. of Painting Indus. Ins. Fund v. Glass Fabricators,*

*Inc.*, No. 1:14-cv-00313, 2014 WL 5878201, at *3 (N.D. Ohio Nov. 10, 2014) (denying permissive intervention because declaratory judgment and underlying action would "require different evidence and different laws will apply").

Erie asserts, without elaboration, that its motion "alleges at least one common question of law or fact" with the underlying action. (ECF Nos. 54 at 11). In any event, when ruling on prior motions to intervene filed by insurers of hotel-defendants in TVPRA cases, this Court has found that the insurers' interest is not based on a sufficiently similar question of law or fact. *See S.R.*, 2024 WL 2795784, at *3 (denying insurer's motion for permissive question in TVPRA case against hotel defendants for lack of common questions of law and fact and the risk of delay and prejudice); *T.E.,* 2023 WL 5531441, at *14 (same); *T.P. v. Red Roof Inns, Inc.*, No. 2:21-CV-4933, 2023 WL 5723373, at *3–4 (S.D. Ohio Sept. 5, 2023) (same); *G.P. v. Wyndham Hotels & Resorts, Inc.*, No. 2:22-CV-2682, 2023 WL 5018562, at *4 (S.D. Ohio Aug. 7, 2023) (same); *K.C.,* 2023 WL 2265214, at *3 (same); *M.A.,* 2022 WL 622124, at *3 (same); *see also S.C. v. Wyndham Hotels & Resorts, Inc.*, No. 1:23-CV-00871, 2023 WL 4879941, at *1 (N.D. Ohio Aug. 1, 2023) (same). Erie's limited interest, moreover, is "contingent on Plaintiff's success and requires a separate inquiry into the language of the insurance policies, which is wholly separate from the TVPRA claims in the main action." *S.R.*, 2024 WL 2795784, at *3.

Because Erie fails to articulate a common question of law or fact between its insurance claims and Plaintiff's TVPRA claims, permissive intervention is not warranted. Additionally, there is a risk of delay and prejudice to the original parties "if complex issues of insurance coverage are introduced, and intervention would force Plaintiff to become involved in a coverage dispute in which it does not yet have an interest." *See S.R.*, 2024 WL 2795784, at *3 (internal quotation marks

and citations omitted).  For all these reasons, this Court declines to exercise its discretion to grant

Erie permissive intervention.

*  *  *

Accordingly, Erie's Motion to Intervene (ECF No. 54) is **DENIED**.

## IV.  CONCLUSION

For the foregoing reasons, Franchisees' Motion to Dismiss (ECF No. 50) and Erie's Motion

to Intervene (ECF No. 54) are **DENIED**; and BWI's Motion for Leave (ECF No. 52) is **DENIED**

**AS MOOT**.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATE:  March 31, 2025**